G. HEILEMAN BREWING CO., INC., a Wisconsin corporation, Plaintiff-Appellant and Cross-Respondent,

v.

CITY OF LA CROSSE, County of La Crosse and Wisconsin Department of Revenue, Defendants-Respondents and Cross-Appellants.

Court of Appeals

No. 81–297. Argued July 31, 1981.—
Decided October 27, 1981.
(Also reported in 312 N.W.2d 875.)

For the plaintiff-appellant and cross-respondent there were briefs by *Jeffrey J. Jones* and *Foley & Lardner* of Milwaukee, and oral argument by *Timothy Frautschi* of *Foley & Lardner.*

For the defendants-respondents and cross-appellants there were briefs by *Bronson C. La Follette,* attorney general, and *John C. Murphy,* assistant attorney general, and oral argument by *John C. Murphy,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J.   This is an appeal by the G. Heileman Brewing Co., Inc., from an order dismissing four actions, each demanding the return of money paid for a property tax assessment. The actions pertain to the years 1974 through 1977.[1] The state cross-appeals from the portion of the trial court's order which held that the court had jurisdiction to hear Heileman's actions. We conclude that the trial court had jurisdiction and that the plaintiff's complaints did not state claims, and therefore affirm the trial court's order.

In early 1979 the G. Heileman Brewing Co., Inc. learned that the Circuit Court for Jefferson County[2] held that certain large and valuable property peculiar to the brewing industry was exempt from property tax because it was manufacturing property or specific processing

[1] Each complaint also asked for declaratory and injunctive relief and interest on the taxes plaintiff denominates as illegal and void.

[2] The action was entitled *Ladish Malting Co. v. Town of Aztalan and Wisconsin Department of Revenue,* rendered November 24, 1978. The case on appeal was reported at 98 Wis. 2d 496, 297 N.W.2d 56 (Ct. App. 1980).

equipment and not real estate.[3]  Heileman owned similar property upon which it had paid property taxes from the time manufacturing property was exempted from that tax in 1974.  It filed a written claim for return of the taxes in July 1979.  The claims were denied, and these four suits resulted.

The dispositive issues are:

1.  Were Heileman's claims properly brought in circuit court?[4]

2.  Are Heileman's claims barred by its failure to pay the taxes under protest or otherwise to resist their payment?

3.  Are Heileman's claims barred by the doctrine of sovereign immunity?

## SUBJECT MATTER JURISDICTION

The Department of Revenue argues on appeal[5] that the action pertaining to taxes paid in 1977 should be dismissed because the Tax Appeals Commission has exclusive jurisdiction to review whether property is exempt

---

[3] Section 70.11 (27), Stats., exempts the following from property taxes:

Manufacturing machinery and specific processing equipment, exclusively and directly used by a manufacturer in manufacturing tangible personal property.  In this section, "manufacturing machinery and specific processing equipment" means any combination of electrical, mechanical or chemical means, including special foundations therefor, designed to work together in the transformation of materials or substances into new articles or components, including parts therefor, regardless of ownership and regardless of attachment to real property . . .

[4] Heileman also petitioned the Tax Appeals Commission to review the assessment of the taxes.  That matter is apparently now pending before that body.

[5] The arguments of both the Department of Revenue and Heileman are reversed in the review now pending before the Tax Appeals Commission.

under sec. 70.11(27), Stats.[6] The department does not contest the trial court's determination that the circuit court had jurisdiction in this respect in the suits pertaining to the years 1974 through 1976.[7]

Section 73.015(1), Stats., provides that "no person shall contest, in any action or proceeding, any matter reviewable by the [tax appeals] commission unless such person has first availed himself of a hearing before the commission under s. 73.01." The Tax Appeals Commission has exclusive initial jurisdiction for "any matter reviewable by the commission." We must therefore decide whether a claim of exemption under sec. 70.11(27), Stats., is reviewable by the Tax Appeals Commission.

Section 73.01(4)(a), Stats., provides:

Subject to the provisions for judicial review contained in s. 73.015, the [tax appeals] commission shall be the final authority for the hearing and determination of all questions of law and fact arising under sub. (5) and ss. 70.38(4)(a), 70.64, 70.995(8), 71.12, 72.86(4), 76.38(12) (a), 76.39(4)(c), 76.48(6) and 77.59(6)(b). . . .

Section 70.995, Stats., defines certain real estate and personal property as "manufacturing property," and provides for the assessment of that property by the Department of Revenue. Prior to the enactment of sec. 70.995 in 1973, local municipalities assessed the property defined in sec. 70.995 as "manufacturing property." Section 70.11(27) exempts some manufacturing property from assessment and taxation. Both secs. 70.995 and 70.11

---

[6] From 1974 through 1976, the state was divided into five board of review districts. Each board reviewed assessments of manufacturing property if an appeal or protest was brought by the owner of the property. For 1977 the jurisdiction exercised by the district boards of review was transferred to the Tax Appeals Commission. *See* secs. 777 and 778, ch. 29, Laws of 1977.

[7] Statutory authority to review manufacturing property cases was first given to the Tax Appeals Commission in 1977.

(27) were created by the executive budget bill of the 1973 legislature, ch. 90, Laws of 1973.

Section 73.01(4)(a), Stats., gives exclusive initial jurisdiction to the Tax Appeals Commission of "all questions of law and fact arising under . . . s. 70.995(8)."[8] Section 70.995(8)(c), Stats., is the crucial portion of sec. 70.995(8), and provides:

(c) All objections to the *amount or valuation* of real or personal property shall be first made in writing on a form prescribed by the department of revenue and shall be filed with the clerk of the tax appeals commission as provided in s. 73.01(5) and the rules of practice promulgated by the commission within the time prescribed in par. (b). . . . [Emphasis supplied.]

The parties disagree on whether "amount or valuation" encompasses a determination of whether property is exempt under sec. 70.11(27), Stats.

In *Krembs v. Merrill*, 183 Wis. 241, 197 N.W. 818 (1924), the court held that "amount or valuation" as provided in sec. 70.47(6), Stats. (1921), did not embrace the initial question whether the property was exempt from taxation. The court did so because the statutory powers of a board of review did not permit a board of review to make that initial determination.[9] The court said:

Upon examining the powers of the board of review as defined by statute, it will be seen that they are limited to an examination and correction of the amount of property, of its description, of its value as found on the tax roll, and the addition thereto under certain conditions of omitted property.

---

[8] Section 73.01(4), Stats., also gives exclusive initial jurisdiction to the Tax Appeals Commission of all questions of law and fact arising under several other statutes. These statutes are procedural and do not pertain to the subject matter of these suits.

[9] The powers of the board of review discussed in *Krembs v. Merrill*, 183 Wis. 241, 197 N.W. 818 (1924), are found in sec. 70.47, Stats. (1921).

*Krembs,* 183 Wis. at 245, 197 N.W. at 819.

*Pelican Amusement Co. v. Pelican,* 13 Wis. 2d 585, 594, 109 N.W.2d 82, 87 (1961), held "In cases of illegal taxes not involving the amount of valuation of the property or excessive assessment, it is not necessary to comply with sec. 70.47 (7) (a), Stats., because such section is inapplicable and is restricted to questions of amount and valuation of property."

The court did not examine the powers of the board of review as it had done in *Krembs, supra,* despite the substantial difference between sec. 70.47, Stats. (1921), and sec. 70.47, Stats. (1957). It accepted the term "amount or valuation" as exclusive of matters not falling within those two terms.

The court again discussed the distinction between an objection to the amount or valuation of property and objections to other aspects of taxation in *Bitters v. Newbold,* 51 Wis. 2d 493, 187 N.W.2d 339 (1971). Though the court did not directly address the issue, it said:

> Appellant had two statutory procedures open to him. He might have paid the tax as assessed and then filed a claim with the township to recover that portion which was illegally collected. If that claim were denied, he might have brought a court action to recover it, pursuant to sec. 74.73, Stats. (This, of course, accepts *arguendo* appellant's claim that his objections were based on grounds other than amount or valuation of property.)

*Bitters,* 51 Wis. 2d at 512, 187 N.W.2d at 348 (footnote omitted).

By 1971 the term "amount or valuation" had become a term of art, and had a meaning that did not encompass the question whether property is exempt from taxation.

The state argues that *Sawejka v. Morgan,* 56 Wis. 2d 70, 201 N.W.2d 528 (1972), broadly defines the jurisdiction of the Tax Appeals Commission so as to encompass the determination of property's exemption from taxation: "Sec. 73.01 (4), Stats., is a broad grant of authority

to the commission to hear and determine all questions of law and fact arising under the tax laws of the state, except as may be otherwise expressly designated."[10] 56 Wis. 2d at 75, 201 N.W.2d at 531.

Whether the present language of sec. 73.01(4), Stats., has broadened or narrowed the jurisdiction of the Tax Appeals Commission, it is apparent that sec. 70.995(8), Stats., ultimately determines the commission's jurisdiction in manufacturing property cases. That section uses the language "amount or valuation" which had acquired a meaning long before the enactment of sec. 70.995(8) in 1973. We cannot abandon that acquired meaning.[11]

[10] Section 73.01(4) and (5), Stats. (1971), considered in *Sawejka v. Morgan*, 56 Wis. 2d 70, 201 N.W.2d 528 (1972), differs from that statute as it now exists. At the time *Sawejka* was decided, those sections provided in part:

(4) POWERS AND DUTIES DEFINED. (a) Subject to the provisions for judicial review contained in the statutes, the commission shall be the final authority for the hearing and determination of all questions of law and fact arising under the tax laws of the state, except such as may be otherwise expressly designated. . . .

. . . .

(5) APPEALS TO COMMISSION. (a) Any person who has filed an application for abatement or a claim for refund with the department of revenue or assessor of incomes and who is aggrieved by a determination òf the department or assessor denying such application for abatement or claim for refund, may, within 30 days after such denial but not thereafter, file a petition for review of the action of the department or assessor and 4 copies thereof with the clerk of the commission. . . .

. . . .

(c) Whenever an appeal is taken from any determination of the secretary of revenue under sub. (4)(a) and no other procedure for appeal is specified in ch. 73 or ch. 76, the person feeling aggrieved by such determination shall file with the clerk of the commission . . . .

[11] The Tax Appeals Commission now handles many questions of law in other areas, and could here if the legislature permitted it to do so. Whether that is advisable is a matter the legislature might

POLICY FACTORS PREVENT RECOVERY

Section 74.73 (1), Stats., provides:

Any person aggrieved by the levy and collection of any unlawful tax assessed against him may file a claim therefor against the town, city or village which collected such tax in the manner prescribed by law for filing claims in other cases. . . . If any town, city or village fails or refuses to allow the claim, the claimant may have and maintain an action against the same for the recovery of all money so unlawfully levied and collected . . . . Every such claim shall be filed, and every action to recover any money so paid shall be brought, within one year after such payment.

Heileman did not commence these actions within one year after paying the contested taxes. However, in several cases culminating in *Family Hospital Nursing Home, Inc. v. Milwaukee,* 78 Wis. 2d 312, 324–25, 254 N.W.2d 268, 275 (1977), the court held sec. 74.73 (1), Stats., inapplicable:

This court has held that where property is found to be exempt from taxation, the taxing officers were without jurisdiction to levy the tax and therefore compliance with the statutory limitation period in which to bring the claim was not required. *Trustees of Clinton Lodge v. Rock County,* 224 Wis. 168, 170, 272 N.W. 5, [6] (1937). The most recent application of the rule is found in *Hahn v. Walworth County,* 14 Wis. 2d 147, 154, 109 N.W.2d 653, [656] (1961) which, like *Clinton Lodge,* was an action to set aside a tax sale on the ground the property was tax exempt. . . .
The theory for not applying the limitation period is that the tax assessment was void *ab initio* so there was nothing for a statute of limitation to act upon. *Chicago & N. W. R. Co. v. Arnold,* 114 Wis. 434, 436, 90 N.W.

---

consider. Section 13.93 (2) (d), Stats., authorizes the revisor of statutes to report matters of this sort to the law revision committee. This appears to be a case that falls within the area encompassed by sec. 13.93 (2) (d).

434, [435] (1902) ; *Wisconsin Real Estate Co. v. Milwaukee,* 151 Wis. 198, 138 N.W. 642 (1912).

The Department of Revenue argues that even in the case of tax assessments void *ab initio,* the taxpayer may not recover if the taxes are voluntarily paid. It relies upon *Interstate Department Stores v. Henry,* 224 Wis. 394, 396, 272 N.W. 451, 452 (1937), where the court said:

It has been held that a statutory method . . . for preserving the right to recover an invalid tax once paid is not exclusive of the common-law right to recover it where it was paid under compulsion. *Ward v. Board of Commissioners of Love County,* 253 U.S. 17, . . . [1920] ; *Carpenter v. Shaw,* 280 U.S. 363, . . . [1930] ; *Security Nat. Bank v. Young* (C. C. A.), 55 Fed. (2d) 616 [1932].

*Interstate* involved a tax collected under a statute later held unconstitutional. The supreme court termed the tax "invalid," and Heileman argues that the *Interstate* rule should not apply to taxes void *ab initio.* Heileman did not plead that its tax payments were involuntary or paid under protest.

We conclude that the similarity between a tax assessed pursuant to an unconstitutional statute and a tax assessed against exempt property compels the result that the voluntary payment rule applies to this case. "An unconstitutional act of the legislature is not a law. It confers no rights, imposes no penalty, affords no protection, is not operative, and in legal contemplation has no existence." *John F. Jelke Co. v. Beck,* 208 Wis. 650, 661, 242 N.W. 576, 581 (1932). "An unconstitutional law is void, and is as no law." *Ex Parte Siebold,* 100 U.S. 371, 376 (1879). A tax assessed against exempt property has a similar result; it is void *ab initio.*

The requirement of resistance to or involuntary payment of a tax is one of public policy: government has an

interest in allocating its resources. It is desirable that government know when it contemplates spending public funds that those funds are either available or subject to loss through tax refund. The requirement that one who seeks repayment of illegally assessed taxes notify the governmental unit that he wants them returned is not onerous. The inequity of paying illegally collected taxes is outweighed by the requirement that government know what amount of income it has available.

Heileman argues that even if the voluntary payment rule applies to the taxes it paid on its exempt manufacturing property, the payments were involuntary because they were paid under a mistake of fact. Heileman asserts it did not know the exempt nature of its manufacturing property, and believed it to be taxable. Payment of taxes under mistake of fact is not considered voluntary, and the voluntary payment rule therefore does not apply. *State ex rel. Pabst B. Co. v. Kotecki,* 163 Wis. 101, 104, 157 N.W. 559, 560 (1916).

Heileman's argument confuses the factual nature of its property with the legal conclusion as to the property's exempt status. As in *Ladish Malting Co. v. Dept. of Revenue,* 98 Wis. 2d 496, 297 N.W.2d 56 (Ct. App. 1980), Heileman's dispute does not concern the physical characteristics of the allegedly exempt items, but focuses upon whether an item whose physical characteristics are undisputed falls within a statutory exemption. The application of a statute to a set of facts is a question of law. *Kania v. Airborne Freight Corp.,* 99 Wis. 2d 746, 758–59, 300 N.W.2d 63, 68 (1981). Plaintiff's mistake was one of law.

The general rule that illegal taxes paid under mistake of law are not recoverable is subject to exceptions which in 1885 led the court to state, "The decisions are very conflicting and in much confusion on this question, and abound in nice and critical distinctions." *The Green Bay*

*& Mississippi Canal Co. v. Hewitt, Jr. and others*, 62 Wis. 316, 331, 21 N.W. 216, 220 (1885).

This is an action for money had and received which is an action at law, though governed by equitable principles. The defendant may rely upon any defense which shows that in equity and good conscience the plaintiff is not entitled to recover in whole or in part. *Amalgamated Asso., etc., Div. 998 v. Danielson*, 24 Wis. 2d 33, 36, 128 N.W.2d 9, 11 (1964).

Heileman has paid taxes which it alleges it need not have paid. It did so because it did not recognize a difficult and innovative reason why it need not pay those taxes. However, that argument was seen by another in the brewing industry, and Heileman waited until long after the taxes involved in these suits were spent. "Unreasonable delay, lapse of time, coupled with injury or prejudice . . . constitute a defense in a court of equity." *Diehl v. Dunn*, 13 Wis. 2d 280, 286, 108 N.W.2d 519, 522 (1961). Plaintiff's complaints demand in excess of $110,000.00 plus an uncertain amount for property partially exempt together with interest. Defendants would be injured by being now required to refund plaintiff's taxes. A balancing of the parties' equities favors the defendants. We consequently find no exception to the voluntary payment rule. The trial court correctly held that plaintiff's complaints did not state a claim.

## SOVEREIGN IMMUNITY

We have decided that these cases were properly dismissed for reasons of public policy. We therefore need not determine whether plaintiffs are also prevented from recovering because of principles of sovereign immunity.

*By the Court.*—Order affirmed.